AO 93   (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *Information Associated with Facebook User ID* | ) | |
| *JASON.PIGEON.7 (4267468193268740)* | ) | Case No. 21-MJ-109-JFJ |
| *that is stored at premises controlled by Facebook, Inc.* | ) | |
| | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ Oklahoma _____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment "B"

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 3-1-21 _____
*(not to exceed 14 days)*

☐ in the daytime   6:00 a.m. to 10 p.m.   ☑ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge _____ Jayne _____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   2-18-21, 11:33 AM   _____
Judge's signature

City and state:   Tulsa, Oklahoma _____   Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

AO 93   (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| 21-MJ-109-JFJ | February 19TH, 2021  9:58 AM | N/A |
| Inventory made in the presence of : | | |
| N/A | | |
| Inventory of the property taken and name of any person(s) seized: | | |

259 MB data

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:   MARCH 7TH, 2021

_____
Executing officer's signature   #250

MATTHEW LEMON, DETECTIVE T.P.D.
Printed name and title

## Attachment A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID, JASON.PIGEON.7, associated with the numeric Facebook user ID, 4267468193268740, and located at https://www.facebook.com/jason.pigeon.7 (active on, but not limited to, November 28, 2020), that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

1

## Attachment B

### Particular Things to be Seized

### I.    Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the

possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether

such information is located within or outside of the United States, including any

messages, records, files, logs, or information that have been deleted but are still

available to Facebook, or have been preserved pursuant to a request made under 18

U.S.C. § 2703(f), Facebook is required to disclose the following information to the

government for each user ID listed in Attachment A:

a.    All contact and personal identifying information for the user ID,
      including the full name, user identification number, birth date, gender,
      contact e-mail addresses, physical address (including city, state, and zip
      code), telephone numbers, screen names, websites, and other personal
      identifiers.

b.    All activity logs for the account and all other documents showing the
      user's posts and other Facebook activities from November 28, 2020 to
      the present;

c.    All photos and videos uploaded by that user ID and all photos and
      videos uploaded by any user that have that user tagged in them from
      November 28, 2020 to the present, including Exchangeable Image File

2

("EXIF") data and any other metadata associated with those photos and videos;

d.    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.    All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f.    All other records and contents of communications and messages made or received by the user from November 28, 2020 to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

g.    All "check ins" and other location information;

h.    All IP logs, including all records of the IP addresses that logged into the account;

i. All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

j. All information about the Facebook pages that the account is or was a "fan" of;

k. All past and present lists of friends created by the account;

l. All records of Facebook searches performed by the account from November 28, 2020 to the present;

m. The types of service utilized by the user;

n. The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o. All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p. All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

4

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1151, 1153, 2242(2) (Sexual Abuse in Indian Country), involving Jason Pigeon and occurring on and after November 28, 2020, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Communications between the user ID and others regarding the party on November 28, 2020 and the sexual abuse of the victim, D.B., on or about that date;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement

5

officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

FILED

FEB 18 2021

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH FACEBOOK USER ID
JASON.PIGEON.7 (4267468193268740)
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK,
INC.

Case No. 21-MJ-109-JFJ

**Filed Under Seal**

### Order

The United States has submitted an application pursuant to 18 U.S.C. §

2705(b), requesting that the Court issue an Order commanding Facebook, Inc.

("Facebook"), an electronic communication service provider and/or a remote

computing service, not to notify any person (including the subscribers and customers

of the account listed in the warrant) of the existence of the attached warrant until one

year from the date of this warrant.

The Court determines that there is reason to believe that notification of the

existence of the attached warrant will seriously jeopardize the investigation or

unduly delay a trial, including by giving the target an opportunity to flee from

prosecution, destroy or tamper with evidence, change patterns of behavior,

intimidate potential witnesses, or endanger the life or physical safety of an

individual. *See* 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Facebook

shall not disclose the existence of the attached warrant, or this Order of the Court, to

1

the listed subscriber or to any other person, for a period of one year, except that

Facebook may disclose the attached warrant to an attorney for Facebook for the

purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed

until otherwise ordered by the Court.

2-18-21
Date

HONORABLE JODI F. JAYNE
United States Magistrate Judge

2

AO-106 (Rev: 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT



**FILED**

FEB 1 8 2021

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

for the

Northern District of Oklahoma

In the Matter of the Search of:          )
*Information Associated with Facebook User ID*    )     Case No. 21-MJ-109-JFJ
*JASON.PIGEON.7 (4267468193268740) that is stored at*    )
*premises controlled by Facebook, Inc.*    )
                                          )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1151, 1153, 2242(2) | **Sexual Abuse in Indian Country** |

The application is based on these facts:

**See Affidavit of Det. Matthew Lemon, Sand Springs Police Dept., attached hereto.**

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Det. Matthew Lemon, Sand Springs Police Dept.
*Printed name and title*

by phone. JJ

Sworn to ~~before me and signed in my presence.~~

Date: 2-18-21

*Judge's signature*

City and state:   Tulsa, OK      Tulsa, Oklahoma

Jodi F. Jayne, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF:  )
                                 )
INFORMATION ASSOCIATED WITH      )
FACEBOOK USER ID JASON.PIGEON.7 )      Case No. _____
(4267468193268740)               )
THAT IS STORED AT PREMISES       )
CONTROLLED BY                    )
FACEBOOK, INC.                   )

**Affidavit in Support of an Application for a Search Warrant**

I, Detective Matthew Lemon, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID, JASON.PIGEON.7, that is associated with the numeric Facebook user ID, 4267468193268740, and located at the address: https://www.facebook.com/jason.pigeon.7. This information is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

1

Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.  I have been employed as a Police Officer in Sand Springs, Oklahoma since 2005, a detective since 2013, and a Tulsa Safe Trails Task Force Task Force Officer since 2020. I have completed the Council on Law Enforcement Education and Training Academy for peace officer certification and have over 1,100 hours of training and continuing education.  I also hold a Bachelor of Science in Criminal Justice from Northeastern State University. My duties with the Sand Springs Police Department, include, but are not limited to, the investigation and enforcement of violent crimes including Sexual Abuse.

3.  I am an investigative or law enforcement officer of the United States in accordance with 18 U.S.C. § 2510(7), in that I am a detective for City of Sand Springs Police Department and have been deputized as a Special Deputy United States Marshal with the Federal Bureau of Investigation. Based on my training and experience, I am authorized by law to conduct investigations of violent crimes.

4.  As part of my duties, I investigate criminal violations relating to crimes in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, and 1153, to include Sexual Abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 2242(2). I have received training in and have investigated major crimes including but not limited to sexual abuse.

2

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1151, 1153, 2242(2) (Sexual Abuse in Indian Country) have been committed by Jason Pigeon. There is also probable cause to search the information described in Attachment A for evidence of these crimes of these crimes further described in Attachment B.

**Jurisdiction**

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**Probable Cause**

8. Jason Matthew Pigeon, the suspect, is an Indian male. Specifically, he is a registered citizen of the Cherokee Nation and was born on September 27, 1985.

9. The victim, hereinafter referred to as "D.B.," is a female and registered citizen of the Cherokee Nation. D.B.'s date of birth is May 29, 1996.

3

10. On the evening of November 28, 2020, D.B. went with her friend, B.F., to a house party at Pigeon's residence located at 305 West Prattwood Drive in Sand Springs, Oklahoma. This house is located within the bounds of the Muscogee (Creek) Nation, in the Northern District of Oklahoma. Muscogee (Creek) Nation is in Indian Country as defined by 18 U.S.C. § 1151.

11. While at the house party at Pigeon's residence, D.B. drank alcohol and smoked some marijuana. D.B. later told officers that Pigeon was a white male with dark brown hair, brown eyes, "scruffy" facial hair, approximately 6' tall, approximately 170 pounds and approximately 30 years old. She stated she knew Pigeon by his initials, "J.P." At approximately 2:00 a.m., D.B. felt tired and went to Pigeon's bedroom to sleep on the bed.

12. D.B. reported that around 6:00 a.m., she woke up still in Pigeon's bed and realized Pigeon was on top of her. She immediately pushed Pigeon off her and leapt up from the bed. She then noticed that her underwear was lying on the floor and her leggings were pulled down to her knees. D.B. told officers that she was not sure how her underwear was taken off over her leggings. D.B. later told officers that as soon as she saw her underwear on the floor, she turned to Pigeon and said to him, "You literally just raped me."

13. During a Sexual Assault Nurse Examination (hereinafter "SANE") on November 29, 2020, D.B. told the nurse examiner that when she awoke up, Pigeon

was penetrating her vagina and had his hand around her neck. D.B. stated she was not being choked or strangled.

14. After leaving the bedroom, D.B. encountered Pigeon's roommates, whom she knew only by their nicknames, "Seezy" and J." D.B. told officers that Seezy and J appeared to know what happened and apologized to her. Seezy and J then confronted Pigeon, but Pigeon acted as if D.B. was lying about the sexual assault. D.B. told Pigeon what he did to her, but Pigeon denied it.

15. D.B. then left the residence and drove to a Sonic restaurant at 101 East 38 Street in Sand Springs, Oklahoma. D.B. did not have a working cell phone with her, so she borrowed a phone at the Sonic and called her mother, P.U. for help. Once P.U. arrived at Sonic, P.U. called the Sand Springs Police Department to report the sexual assault.

16. An officer from the Sand Springs Police Department subsequently conducted a local records check for "J.P.", which revealed a Jason M. Pigeon, DOB: 09/12/85, who lived at 305 West Prattwood Drive in Sand Springs, Oklahoma. The officer also saw a mugshot of Pigeon associated with these records. The officer examined the mugshot associated with the record and determined it closely matched the description D.B. gave to the police of her attacker.

17. On February 1, 2021, I served a signed federal search warrant for Pigeon's DNA at Pigeon's house at 305 West Prattwood Drive in Sand Springs, Oklahoma. I met Pigeon during the visit and informed him of the purpose for my visit. I then took

5

two buccal swabs from Pigeon. During this meeting, I got a good look at Pigeon's face and overall appearance.

18. Later that day, on February 1, 2021, I conducted an online search on Facebook for Jason Pigeon and located a profile for Pigeon at the following address: https://www.facebook.com/jason.pigeon.7. This Facebook user ID is associated with the numeric Facebook user ID, 4267468193268740. I reviewed the photographs on this account, including the profile photograph below, and recognized the individual pictured as Jason Pigeon, whom I met earlier that day. Based on the foregoing, I determined the below Facebook profile belonged to Pigeon.

6



19. On February 5, 2021, I made a request to Facebook pursuant to 18 U.S.C. §
2703(f), requesting Facebook to preserve all information associated with the
SUBJECT ACCOUNT.

## Background Concerning Facebook

20. Facebook owns and operates a free-access social networking website of the
same name that can be accessed at http://www.facebook.com. Facebook allows its
users to establish accounts with Facebook, and users can then use their accounts to

share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

21. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

22. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

23. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself,

8

to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

24. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions like house parties, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

25. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes,

9

the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

26. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger.  These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

27. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

28. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

29. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

30. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

31. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

33. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

11

34. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account

12

at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information

concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

37. In my training and experience, evidence of who was using Facebook and from where, and evidence related to sexual abuse of the victim, D.B., may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

38. The stored communications and files connected to a Facebook account may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Based on my training and experience, suspects in sexual abuse investigations communicate using instant messages, emails, and videocalls to discuss the crime and investigation and their respective involvement. Further, based on my training and experience, suspects in sexual abuse investigations often take photographs and videos that establish their presence at the crime scene or knowledge of the victim leading up to or after the assault.

39. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook can indicate who has used or

14

controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

40. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

41. Other information connected to the use of Facebook may lead to the discovery of additional evidence. For example, the direct messages on a Facebook account may reveal communications between the suspect and confederates regarding the sexual abuse of the victim, the suspect's motive and intent to sexually abuse the

victim, or consciousness of guilt regarding the sexual abuse. Other information connected to the use of Facebook may also lead to the identification of co-conspirators, witnesses, and instrumentalities of the crimes under investigation.

42. Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning the suspect and his use of Facebook to facilitate and communicate about the crime under investigation. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## Information to be Searched and Things to be Seized

43. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## Conclusion

44. Based on the foregoing, I request that the Court issue the proposed search warrant.

16

45. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

### Request for Sealing

46. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

MATTHEW LEMON
Detective
Sand Springs Police Department

17

Subscribed and sworn to before me on _by phone_ __February 18_____, 2021

_____

HONORABLE JODI F. JAYNE
United States Magistrate Judg

18

## Attachment A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID,

JASON.PIGEON.7, associated with the numeric Facebook user ID,

4267468193268740, and located at https://www.facebook.com/jason.pigeon.7

(active on, but not limited to, November 28, 2020), that is stored at premises owned,

maintained, controlled, or operated by Facebook Inc., a company headquartered in

Menlo Park, California.

1

## Attachment B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

a. All contact and personal identifying information for the user ID, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

b. All activity logs for the account and all other documents showing the user's posts and other Facebook activities from November 28, 2020 to the present;

c. All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from November 28, 2020 to the present, including Exchangeable Image File

("EXIF") data and any other metadata associated with those photos and videos;

d.      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

e.      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

f.      All other records and contents of communications and messages made or received by the user from November 28, 2020 to the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

g.      All "check ins" and other location information;

h.      All IP logs, including all records of the IP addresses that logged into the account;

i.   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

j.   All information about the Facebook pages that the account is or was a "fan" of;

k.   All past and present lists of friends created by the account;

l.   All records of Facebook searches performed by the account from November 28, 2020 to the present;

m.   The types of service utilized by the user;

n.   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

o.   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

p.   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

4

II.    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1151, 1153, 2242(2) (Sexual Abuse in Indian Country), involving Jason Pigeon and occurring on and after November 28, 2020, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Communications between the user ID and others regarding the party on November 28, 2020 and the sexual abuse of the victim, D.B., on or about that date;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement

5

officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ associated with the Facebook user ID, JASON.PIGEON.7, that is associated with the numeric Facebook user ID, 4267468193268740, and located at the address: https://www.facebook.com/jason.pigeon.7. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b. such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                              Signature

2

FILED

FEB 1 8 2021

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH FACEBOOK USER ID
JASON.PIGEON.7 (4267468193268740)
THAT IS STORED AT PREMISES
CONTROLLED BY FACEBOOK,
INC.

Case No. 21-MJ-109-JFJ

**Filed Under Seal**

**Application for Order Commanding Facebook Not to Notify Any Person of the
Existence of Warrant**

The United States requests that the Court order Facebook, Inc. ("Facebook")

not to notify any person (including the subscribers and customers of the account

listed in the warrant of the existence of the attached warrant for one year.

Facebook is a provider of an electronic communication service, as defined in

18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. §

2711(2).  Pursuant to 18 U.S.C. § 2703, the United States obtained the attached

warrant, which requires Facebook to disclose certain records and information to the

United States.  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order

commanding a provider of electronic communications service or remote computing

service to whom a warrant, subpoena, or court order is directed, for such period as

the court deems appropriate, not to notify any other person of the existence of the

warrant, subpoena, or court order."  *Id.*

1

In this case, such an order would be appropriate because the attached warrant relates to an ongoing criminal investigation that is neither public nor known to the target of the investigation, and its disclosure may alert the target to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving the target an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subject under investigation could destroy that evidence, including information saved to their personal computers.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Facebook not to disclose the existence or content of the attached warrant for one year, except that Facebook may disclose the attached warrant to an attorney for Facebook for the purpose of receiving legal advice.

The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

2

Executed on   2/18/2021                .

/s/ Leah D. Paisner
LEAH D. PAISNER, NJ Reg. # 175362015
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, OK 74119

3